**THE LAW OFFICES OF LEON OZERAN**
Leon Ozeran, Esq., CA Bar No.: 296071
Whitsett Ave., Suite 212
Valley Village, CA 91607
Tel: (310) 461-3730
Email: leon@ozeranlaw.com

Attorneys for Plaintiff
RUFFINA YURYEVA

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| RUFFINA YURYEVA, individually, and on behalf of a class of similarly situated individuals,<br><br>Plaintiff,<br><br>v.<br><br>PATAFOODS, INC. d/b/a AMARA ORGANIC FOODS,<br><br>Defendant. | Case No.  2:26-cv-4037<br><br>**PLAINTIFF'S CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff RUFFINA YURYEVA ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, brings this Class Action Complaint ("Complaint") against Defendant PATAFOODS, INC. d/b/a AMARA ORGANIC FOODS ("Defendant").

## INTRODUCTION

1.     This is a consumer protection action arising from Defendant's labeling, advertising, marketing, and sale of Defendant's food products called Amara Organic Smoothie Melts (the "Products").  The Products are available in a variety of flavors,

each with the same or substantially the same representations made on the Product packaging.[1]

2.     Specifically, Defendant represents and markets the Products as "Plant-Based Yogurt," "Non-Dairy Yogurt," and/or "Yogurt" smoothie melts.

3.     Defendant markets the Products to consumers for whom representations concerning yogurt are material.  Yogurt is commonly understood to be a cultured food associated with yogurt cultures, probiotics, and related nutritional benefits.

4.     Defendant's labeling and advertising are deceptive because the Products are marketed as yogurt products even though they are not cultured with yogurt cultures and do not contain yogurt cultures or probiotic ingredients of the kind reasonable consumers associate with yogurt.

5.     Reasonable consumers understand "yogurt," including "plant-based yogurt," to refer to a cultured product; Defendant reinforces that understanding through its own marketing and blog statements, as detailed below; these melts are sold with yogurt language despite not being cultured or disclosing yogurt/live-culture/probiotic ingredients.

6.     Defendant further deceives consumers by touting "Finally. A Yogurt Melt you can Trust," despite knowing its Products are in fact untrustworthy and are not a yogurt product.[2]

7.     Defendant's own public statements further reinforce the message that products marketed as "yogurt"—including plant-based yogurt—contain probiotics or live cultures. Defendant has publicly described dairy-free yogurts as being "full of probiotics" and has described probiotics/live cultures as ingredients used to make non-dairy yogurt.

---

[1] There are four flavors of the Product: (1) Mango Carrot, (2) Mixed Red Berry, (3) Mighty Sweet Green, and (4) Carrot Raspberry.
[2] https://amaraorganicfoods.com/pages/yogurtsmoothiemelts?srsltid=AfmBOopxBq 3hnxaaSRuyQhp8Ex_TFp_1xZfG22XAl-NW2SdzhUJ4WYpR

8. Reasonable consumers, acting under the circumstances, are likely to understand Defendant's "yogurt" representations to mean that the Products are made using the culturing features that define yogurt. In fact, the Products are not.

9. Plaintiff purchased the Products in Los Angeles, California, relied on Defendant's yogurt-related representations, and paid more than she otherwise would have paid, or would not have purchased the Products at all, had she known the truth.

10. Plaintiff brings this action under California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 et seq.; False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 et seq.; and Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq. on behalf of all consumers in the United States.

**PARTIES**

11. Plaintiff Ruffina Yuryeva is a citizen of California, residing in Los Angeles, California. She relied on Defendant's deceptive labeling claims and material omissions and purchased the Products during the Class Period while residing in Los Angeles.

12. Defendant PataFoods, Inc. d/b/a Amara Organic Foods is a Delaware corporation. Defendant maintains a registered agent in California at 1325 J Street, Sacramento, CA. Throughout the Class Period, Defendant was the manufacturer and distributor of the Products.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000.00, exclusive of interest and costs; and (iii) minimal diversity exists.

14. This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of California, contracts to supply goods within the State of California, and supplies goods within the State of California.

COMPLAINT

Defendant, on its own and through its agents, is responsible for the formulation, ingredients, manufacturing, labeling, marketing, and sale of the Products in California. The Products' package states the Products are "Distributed by PataFoods, Inc. San Francisco, CA 94117." The marketing of the Products, including the decision of what to include and not include on the labels, emanates from Defendant. Thus, Defendant has intentionally availed itself of the markets within California through its advertising, marketing, and sale of the Products to consumers in California, including Plaintiff. The Court also has specific jurisdiction over Defendant as it has purposefully directed activities towards the forum state, Plaintiff's claims arise out of those activities, and it reasonable for Defendant to defend this lawsuit because it has sold the at-issue Products to Plaintiff and members of the Class in California. By distributing and selling the Products in California, Defendant has intentionally expressly aimed conduct at California which caused harm to Plaintiff and the Class which Defendant knows is likely to be suffered by Californians.

15. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Defendant engages in continuous and systematic business activities within the State of California. Venue is further proper pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District because Plaintiff purchased one of the Products within this District. Venue is also proper in this District pursuant to Cal. Civ Code. § 1780(c) because Defendant is doing business in this District, and Plaintiff purchased a Product at issue in this District.

## FACTUAL BACKGROUND

### A. The Products and the Challenged Representations

16. Defendant sells the Products under the Amara brand.

17. The challenged Products include Amara Organic Smoothie Melts marketed with yogurt-related representations, including products identified as

4

"Yogurt Smoothie Melts," "Plant-Based Yogurt Snack," "Yogurt Snack Smoothie Melts," and/or substantially similar representations.  The Products come in a variety of flavors and package sizes.

18.    Some of the Products and related marketing are displayed here:






COMPLAINT

19. The Products are sold through Defendant's website, major retailers, and retailers' websites.

20. On the Products' front labels, on retailers' websites, on Defendant's website, and in associated marketing, Defendant represents the Products as "yogurt snack," "yogurt smoothie melts," and/or "plant-based yogurt snack."

21. For example, Defendant's Product labels and website pages for the Products market the Products using yogurt-related representations including "Plant-Based Yogurt," "Non-Dairy Yogurt Baby Snack," and "Yogurt melts, but better."

22. Defendant also touts that the Products are "A Yogurt Melt you can Trust."

23. Defendant's "yogurt" representations are prominent, uniform, and material. They are not incidental. They are part of the product name, product identity, and central sales message.

**B. The Products Do Not Contain Disclosed Yogurt Cultures or Probiotic Ingredients**

24. Despite the yogurt representations, the Products do not contain yogurt cultures, probiotic ingredients, or other culturing ingredients reasonably associated with yogurt.

25.    The Products are not cultured with yogurt cultures and do not contain the probiotic or yogurt-culture ingredients that reasonable consumers expect from products sold as "yogurt" or "plant-based yogurt."

26.    The Products are instead uncultured fruit- and/or vegetable-based melts that use "yogurt" terminology to capitalize on yogurt's nutritional and probiotic associations.

**C. Reasonable Consumers Understand Yogurt to Be a Cultured Food**

27.    Yogurt is commonly understood by reasonable consumers to be a cultured food.

28.    Consumers often seek yogurt products specifically for their perceived digestive, probiotic, and nutritional attributes.

29.    Defendant itself has reinforced that understanding.  In its public blog posts, Defendant has stated that dairy-free yogurts are "full of probiotics" and has described probiotics/live cultures as the ingredients used to make non-dairy yogurt.

30.    Defendant's own blog post, titled Your Guide to Dairy-Free Yogurt: Nutrition, Recommendations and Recipes, tells consumers that dairy-free yogurts are "full of probiotics" and explains that probiotics are the living cultures that make regular yogurt beneficial for the gut microbiome.[3]

31.    The same blog post includes a section titled "DIY: How to Make Non-Dairy Yogurt at Home," and in Step 3 instructs consumers to "Add Probiotics/Live Cultures," further stating that a consumer may add probiotic powder, liquid probiotics, or a live culture starter to make non-dairy yogurt.

32.    Through these statements, Defendant reinforces the message that yogurt, including non-dairy yogurt, is associated with probiotics or live cultures.  A reasonable consumer therefore would understand Defendant's use of "yogurt" on the Products to convey that the Products possess yogurt-associated culturing features.

---

[3] https://amaraorganicfoods.com/blogs/blog/dairy-free-yogurt-for-toddlers?srsltid=AfmBOopK9pLCNG4OqylIqsuEFCp1e6r3XEPvTguV1NPl9B906v8_9KWq

33.     That representation is false or misleading because, as alleged herein, the Products do not include yogurt cultures, probiotics, or other comparable culturing ingredients, notwithstanding Defendant's use of yogurt terminology.

34.     A reasonable consumer therefore would understand Defendant's yogurt representations to communicate that the Products are in fact yogurt products or possess the culturing features associated with yogurt.  That message is false or misleading.

**D. The Deception Is Material**

35.     Whether a snack is truly a yogurt product is material to reasonable consumers.

36.     Consumers are willing to pay a premium for products they believe provide the distinctive qualities associated with yogurt, including cultured-food characteristics and probiotic associations.

37.     Defendant knew, or at minimum should have known, that its yogurt representations were likely to mislead reasonable consumers.

38.     Defendant intended for consumers to rely on those representations when deciding whether to purchase the Products and how much to pay for them.

**E. Plaintiff's Purchase, Reliance, and Injury**

39.     Plaintiff purchased multiple flavors of the Products in California during the Class Period.  In Fall 2025, Plaintiff purchased the Amara Smoothie Melts in the Mixed Red Berries flavor from Whole Foods.  Plaintiff also purchased the Carrot Raspberry flavored Product from Costco.com in Winter 2026.

40.     Plaintiff saw and relied on Defendant's yogurt-related representations when purchasing the Products.

41.     Plaintiff understood those representations to mean that the Products were made using yogurt cultures and/or probiotic culturing associated with yogurt. The Products are no such thing.

COMPLAINT

42. Plaintiff would not have purchased the Products, or would have paid less for them, had she known the true facts.

43. As a direct and proximate result of Defendant's conduct, Plaintiff suffered economic injury, including loss of money and/or property in the form of a price premium.

44. Plaintiff continues to see the Products for sale online and at retail stores in California and nationwide and desires to purchase the Products again if the Products contained the benefits associated with yogurt or were labeled in a non-deceptive manner. However, as a result of Defendant's ongoing misrepresentations and material omissions, Plaintiff is unable to rely on the Products' labeling when deciding in the future whether to purchase the Products. Plaintiff faces a continuing inability to rely on Defendant's Product labeling and advertising and would purchase the Products in the future if they were lawfully and truthfully labeled.

## F. Plaintiff and Class Members Suffered Injury

45. Plaintiff and putative class members suffered economic injury as a result of Defendant's actions. Plaintiff and putative class members spent money that, absent Defendant's actions, they would not have spent. With all the other food products on the market, a reasonable consumer would choose to purchase a product that offered the nutritional benefits promised. Plaintiff and putative class members are entitled to damages and restitution for the purchase price of the Products that were falsely advertised and not fit for their represented purpose. Consumers, including Plaintiff, would not have purchased Defendant's Products or would have paid less had they known the Products did not contain the health benefits associated with yogurt.

46. Defendant failed to adequately disclose that the Products did not contain the benefits of yogurt, including live cultures. Had Plaintiff and putative class members known the truth, they would not have purchased the Products or would have paid less for the Products.

9
COMPLAINT

47.     Plaintiff and putative class members were denied the benefit of the bargain as a result of Defendant's false advertising and omissions.

48.     Accordingly, Plaintiff brings this action individually and on behalf of other similarly situated consumers to halt the dissemination of Defendant's deceptive advertising message, correct the deceptive perception it has created in the minds of consumers, and obtain redress for those who have purchased the Products.  As a consequence of Defendant's deceptive labeling and material omissions, Plaintiff alleges Defendant has violated and is violating California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750 et seq. (the "CLRA"), California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq. (the "UCL"), and Cal Bus. & Prof. Code § 17500 et seq. (the "FAL").

## NO ADEQUATE REMEDY AT LAW

49.     Plaintiff seeks equitable relief in the alternative and to the extent permitted by law.  Plaintiff and members of the class are entitled to equitable relief as no adequate remedy at law exists.

50.     The statutes of limitations for the causes of action pled herein vary. Class members who purchased the Products more than three years prior to the filing of the Complaint will be barred from recovery if equitable relief were not permitted under the UCL.

51.     Plaintiff lacks an adequate remedy at law with respect to prospective harm. Monetary damages cannot require Defendant to stop using the challenged "yogurt" representations, cannot require Defendant to correct its labeling and advertising, and cannot restore Plaintiff's ability to rely on Defendant's representations in the future.  Plaintiff continues to desire to purchase the Products if they are reformulated to conform to the yogurt-related representations at issue, or if they are truthfully labeled in a non-misleading manner.  Absent injunctive relief, Plaintiff cannot know whether Defendant's labeling has been corrected and therefore

cannot rely on the Products' packaging and advertising when deciding whether to purchase the Products in the future.

52.    Equitable relief is therefore necessary to prevent continuing and future harm to Plaintiff and the Class.  Plaintiff seeks injunctive relief requiring Defendant to cease the challenged representations and to market and label the Products in a lawful, accurate, and non-misleading manner.

53.    To the extent Plaintiff seeks restitutionary equitable relief, Plaintiff alleges that legal remedies alone are not complete or adequate to address the full scope of the ongoing harm caused by Defendant's continuing labeling and marketing practices, including the inability of consumers to rely on the Products' labeling and the need for prospective relief directed at Defendant's conduct.

54.    In addition, Plaintiff is currently unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief necessary.  Further, because a public injunction is available under the UCL, and damages will not adequately benefit the general public in a manner equivalent to an injunction.

## CLASS ACTION ALLEGATIONS

55.    Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this action on behalf of herself and on behalf of all members of the following putative class:

> All persons who purchased the Products for personal use in the United States within the applicable statute of limitations until the date class notice is disseminated.

11
COMPLAINT

56.    Pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3), Plaintiff brings this action on behalf of herself and on behalf of all members of the following putative subclass:

> All persons who purchased the Products for personal use in California within the applicable statute of limitations until the date class notice is disseminated.

57.    The nationwide class and California subclass will be collectively referred to as the "Class."

58.    Excluded from the Class are Defendant and its officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns, as well as any entity in which Defendant has a controlling interest. In addition, governmental entities and any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff are excluded from the Class.

59.    Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time, or to propose or eliminate sub-classes, in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

60.    **Numerosity:** The members of the Class number in the thousands. As a result, joinder of individual plaintiffs is impracticable. The disposition of Plaintiff's claims will provide a substantial benefit to the persons and the court system by using Rule 23 as the vehicle to adjudicate the rights of hundreds or thousands of individuals in one cause of action. Joining and naming each Class member as a co-plaintiff is unreasonable and impracticable.

61. **Commonality and Predominance:** Questions of law or fact common to members of the Class exist that predominate over questions of law or fact affecting only individual members. The questions of law or fact common to all members include, but are not limited to:

    a.    Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

    b.    Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of the Products;

    c.    Whether Defendant made material misrepresentations concerning the Products that were likely to deceive the public;

    d.    Whether Defendant made material omissions concerning the Products that were likely to deceive the public;

    e.    Whether Plaintiff and the Class are entitled to injunctive relief;

    f.    Whether Plaintiff and the Class are entitled to money damages and/or restitution under the same causes of action as the other Class Members.

62. **Typicality:** The claims by Plaintiff are substantially similar to the claims of the entire Class and are typical of the claims of the Class.

63. **Adequacy of Representation:** Plaintiff will fairly and adequately represent the interests of the Class. The interests of the Class are not antagonistic with the interests of any individual Plaintiff. Plaintiff has the ability to assist and adequately protect the rights of the Class during the litigation. Further, Plaintiff is represented by legal counsel who is competent and experienced in products liability cases and in complex litigation, including class action litigation.

COMPLAINT

64. **Superiority:** The maintenance of this action as a class action is superior to all other available methods of adjudication in achieving a fair and efficient adjudication of the controversy in this matter because:

a. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class;

b. The action is manageable as a class action because notice of the pendency of the action can readily be furnished to all prospective members of the Class;

c. In view of the complexity of the issues and the expense of litigation, the separate claims of the individual Class members are insufficient in amount to support the prosecution of separate actions because such members would lack the economic incentive to prosecute such actions; and,

d. The Class members have a common and undivided interest to ensure that consumers do not continue to purchase mislabeled Products.

e. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation; and

f. Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action.

65. Additionally, or in the alternative, the Class also may be certified because Defendant has acted or refused to act on grounds generally applicable to the Class thereby making final declaratory and/or injunctive relief with respect to the members of the Class as a whole, appropriate.

COMPLAINT

66.     Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the Class, on grounds generally applicable to the Class, to enjoin and prevent Defendant from engaging in the acts described, and to require Defendant to provide full restitution to Plaintiff and Class members.

67.     Unless the Class is certified, Defendant will retain monies that were taken from Plaintiff and Class members as a result of Defendant's wrongful conduct. Unless a classwide injunction is issued, Defendant will continue to commit the violations alleged and the members of the Class and the general public will continue to be misled.

## COUNT ONE

### VIOLATION OF CALIFORNIA LEGAL REMEDIES ACT ("CLRA")

### Cal. Civ. Code §§ 1750 *et seq.*

68.     Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

69.     Plaintiff brings this claim under the CLRA individually and on behalf of the Class against Defendant.

70.     Plaintiff and Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

71.     At all relevant times, Defendant constituted a "person," as defined in California Civil Code section 1761(c).

72.     The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a).

73.     Defendant's sale and marketing of the Products constitutes "transactions" within the meaning of the CLRA.

74.     Defendant violated Cal. Civ. Code § 1770(a)(5) by representing that the Products have characteristics, ingredients, uses, benefits, or qualities they do not have, including by representing that the Products are yogurt products when they are not.

75. Defendant violated Cal. Civ. Code § 1770(a)(7) by representing that the Products are of a particular standard, quality, or grade when they are of another. Specifically, Defendant represented that the Products contained "plant-based yogurt." Reasonable consumers therefore understand the Products to contain the health benefits associated with yogurt, including active cultures and probiotics. Defendant failed to disclose that the Products contain no such benefits.

76. Defendant's violations were material and likely to deceive reasonable consumers.

77. Plaintiff relied on Defendant's deceptive conduct and suffered damage as a result.

78. On March 2, 2026, Plaintiff served Defendant with written notice under Cal. Civ. Code § 1782 by certified mail, return receipt requested, identifying the particular violations and demanding correction. More than 30 days have passed and Defendant failed to provide appropriate relief.

79. Plaintiff seeks all relief permitted by the CLRA, including injunctive relief, actual damages, restitution, punitive damages as permitted, attorneys' fees, and costs.

80. Plaintiff and Class members relied on the yogurt representations made by Defendant when making the decision to purchase the Product.

81. Defendant intentionally and knowingly misrepresented material facts regarding the Products with intent to mislead Plaintiff and Class members.

82. Defendant knew or should have known that its conduct violated the California CLRA.

83. Defendant owed Plaintiff and Class members a duty to disclose the truth about the Products because Defendant made incomplete representations regarding the characteristics of the Products, while purposefully withholding material facts from Plaintiff and Class members that contradicted these representations.

16
COMPLAINT

84. Defendant disseminated, or caused to be disseminated, through its advertising, false and misleading representations, including the Products' labeling and marketing, that the Products are a "plant-based yogurt snack," "yogurt smoothie melt," "yogurt snack," and/or contain the benefits of yogurt. Defendant fails to disclose that the Products in fact contain no active or live cultures and no benefits of yogurt. This is a material omission as a reasonable consumer would find the fact that the Products contain no live or active cultures to be important to their decision in purchasing the Products. Indeed, the FDA guidelines require that yogurt products that do not contain live or active cultures affirmatively state that they do not contain live and active cultures.

85. Defendant's representations violate the CLRA in the following ways:

   a. Defendant represented that the Products have characteristics, ingredients, uses, and benefits which they do not have (Cal. Civ. Code § 1770(a)(5));

   b. Defendant represented that the Products are of a particular standard, quality, or grade, which they are not (Cal. Civ. Code § 1770(a)(7));

   c. Defendant advertised the Products with an intent not to sell the Products as advertised (Cal. Civ. Code § 1770(a)(9)); and Defendant represented that the subject of a transaction has been supplied in accordance with a previous representation when it has not (Cal. Civ. Code § 1770(a)(16)).

86. Defendant's wrongful business practices constituted, and constitute, a continuing course of conduct in violation of the CLRA, since Defendant is still representing that the Products have characteristics which they do not have.

87. Plaintiff and Class members were injured and suffered ascertainable loss, injury in fact, and/or actual damage as a proximate result of Defendant's conduct, Plaintiff and Class members overpaid for the Products and did not receive

the benefit of their bargain. These injuries are the direct and natural consequence of Defendant's misrepresentations and omissions.

88.    Under Cal. Civ. Code § 1780(a), Plaintiff and Class members seek monetary relief against Defendant for the harm caused by Defendant's violations of the CLRA as alleged herein.

89.    Plaintiff and Class members also seek punitive damages against Defendant because its unlawful conduct constitutes malice, oppression, and fraud under Cal. Civ. Code § 3294.

90.    Plaintiff and Class members seek an order enjoining Defendant's unfair or deceptive acts or practices, restitution, costs of court, and attorneys' fees under Cal. Civ. Code § 1780(e), and any other just and proper relief available under CLRA.

## COUNT TWO

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW

## Cal. Bus. & Prof. Code § 17200, *et seq.*

91.    Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

92.    Plaintiff brings this count individually and on behalf of members of the Class.

93.    California's Unfair Competition Law (UCL), Cal. Bus. & Prof. Code § 17200 et seq., proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

94.    Defendant's conduct is unlawful because it violates, among other laws, the CLRA and FAL, and because the Products are misbranded within the meaning of California's Sherman Food, Drug, and Cosmetic Law, including because their labeling is false or misleading and, to the extent Defendant represents them as yogurt or plant-based yogurt foods, does not conform to the applicable standard and identity requirements.

95. Defendant committed "unfair" business acts or practices by: (1) engaging in conduct where the utility of such conduct is outweighed by the harm to Plaintiff and the members of the Class; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the members of the Class; and (3) engaging in conduct that undermines or violates the intent of the consumer protection laws alleged herein. There is no societal benefit from deceptive advertising. Plaintiff and the other Class members paid for a Product that is not as advertised by Defendant. Further, Defendant failed to disclose a material fact (that the Products do not contain live or cultures or any probiotics) of which it had exclusive knowledge. While Plaintiff and the other Class members were harmed, Defendant was unjustly enriched by its false misrepresentations and material omissions. As a result, Defendant's conduct is "unfair," as it offended an established public policy. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein.

96. Defendant's conduct is fraudulent because it is likely to deceive reasonable consumers into believing the Products are yogurt products or have the culturing features associated with yogurt. Defendant made these representations with the intent to deceive.

97. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendant's material representations and omissions. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom purchased Defendant's Products. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of purchasing the Product and Defendant's unlawful, unfair, and fraudulent practices.

98. Defendant's wrongful business practices and violations of the UCL are ongoing.

99. Plaintiff and the Class seek pre-judgment interest as a direct and proximate result of Defendant's unfair and fraudulent business conduct. The amount

COMPLAINT

on which interest is to be calculated is a sum certain and capable of calculation, and Plaintiff and the Class seek interest in an amount according to proof.

100. Unless restrained and enjoined, Defendant will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Pursuant to California Business & Professions Code section 17203, Plaintiff, individually and on behalf of the Class, seek (1) restitution from Defendant of all money obtained from Plaintiff and the other Class members as a result of unfair competition; (2) an injunction prohibiting Defendant from continuing such practices in the State of California and nationwide that do not comply with advertising laws; and (3) all other relief this Court deems appropriate, consistent with California Business & Professions Code section 17203.

## COUNT THREE

### VIOLATION OF THE FALSE ADVERTISING LAW

### Cal. Bus. & Prof. Code § 17500, et seq.

101. Plaintiff repeats and realleges the allegations of the preceding paragraphs as if fully set forth herein.

102. Plaintiff brings this count individually and on behalf of members of the Class.

103. California Bus. & Prof. Code § 17500 states: "It is unlawful for any person, … corporation …or any employee thereof with intent directly or indirectly to dispose of real or personal property… or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated … before the public in this state or from this state before the public in any state, in any newspaper or other publication, or any advertising device, … or in any other manner or means whatever, including over the Internet, any statement … which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

COMPLAINT

104.   Defendant made or caused to be made and disseminated throughout California and the United States, through advertising, marketing, and other publications, numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and Class members. Numerous examples of these statements and advertisements appear throughout this Complaint.

105.   Pursuant to Cal. Bus. & Prof. Code § 17500, Plaintiff and the Class seek an order enjoining Defendant's false advertising, any such orders or judgments as may be necessary to restore to Plaintiff and the Class members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and the Class, prays for judgment against Defendant granting the following relief:

a.   Declaring that this action is a proper class action, certifying the Class as requested herein, designating Plaintiff as the Class Representative and appointing the undersigned counsel as Class Counsel;

b.   Ordering restitution and disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the Class members as a result of Defendant's unlawful, unfair, and fraudulent business practices;

c.   Ordering injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and ordering Defendant to engage in a corrective advertising campaign;

d.   Ordering damages for Plaintiff and the Class;

e.   Ordering Defendant to pay attorneys' fees and litigation costs to Plaintiff and the other members of the Class;

f.   Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded; and,

g.   Such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

106.   Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.


Dated:  April 15, 2026            **THE LAW OFFICES OF LEON OZERAN**



                                  By:      */s/ Leon Ozeran*
                                           LEON OZERAN

                                           Attorney for Plaintiff

22
COMPLAINT